EAG:NS
F.#2013R00786

# 14 MISC 296

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION OF          SEALED APPLICATION
THE UNITED STATES OF AMERICA FOR AN
ORDER AUTHORIZING THE RELEASE OF
HISTORICAL CELL-SITE INFORMATION

- - - - - - - - - - - - - - - - -X

       Nadia I. Shihata, an Assistant United States Attorney for the Eastern District of

New York, hereby applies to the Court for Orders pursuant to 18 U.S.C. § 2703(c)(1) and (d),

directing that within seven days Sprint (the "service provider") disclose recorded information

identifying the base station towers and sectors that received transmissions from (347)

361-0854, a telephone issued by the service provider and subscribed to during the relevant

time period by Robert Martinez at 2535 14th St., Astoria, NY 11102 (the "SUBJECT

TELEPHONE"), at the beginning and the end of calls or text message transmissions, and the

mobile switching center serving the SUBJECT TELEPHONE during any calls or text message

transmissions, for the period from September 17, 2012 to September 22, 2012 (collectively,

the "HISTORICAL CELL-SITE INFORMATION").

       In support of this application I state the following:

       1.     I am an Assistant United States Attorney in the Office of Loretta E.

Lynch, United States Attorney for the Eastern District of New York.   As such, I am a

duly-authorized representative of a "governmental entity" under 18 U.S.C. § 2703(c) and (d)

and, as such, am authorized to apply for Orders authorizing the disclosure of the

HISTORICAL CELL-SITE INFORMATION.

2.     The Court is authorized to order the disclosure of the HISTORICAL

CELL-SITE INFORMATION upon the government offering specific and articulable facts

showing that there are reasonable grounds to believe that the information sought is relevant

and material to an ongoing criminal investigation.   18 U.S.C. § 2703(d).

3.     I have discussed this matter with a Special Agent with the Federal

Bureau of Investigation (the "investigative agency"), who is involved in the investigation.

Based upon my discussion with the agent, I believe that the information likely to be obtained is

relevant to an ongoing criminal investigation as required by 18 U.S.C. § 2703(d).   First, the

investigative agency is conducting a criminal investigation into possible violations of federal

criminal laws, including conspiracy to commit extortion and attempted extortion, in violation

of 21 U.S.C. § 1951, and use of a firearm in connection with a crime of violence, in violation of

18 U.S.C. § 924(c), occurring in the Eastern District of New York.     Indeed, on January 30,

2014, a grand jury in the Eastern District of New York returned a superseding indictment

charging DENIS NIKOLLA and REDINEL DERVISHAJ with, inter alia, conspiracy to

commit extortion and attempted extortion of two nightclubs owned by John Doe #1, an

individual whose identity is known to your affiant, and use of a firearm in connection with

these crimes of violence.   See United States v. Dervishaj, et al., Criminal Docket No. 13-668

(S-1)(ENV).   Second, it is believed that REDINEL DERVISHAJ, DENIS NIKOLLA, and

others unknown, have used the SUBJECT TELEPHONE in furtherance of the above offenses.

Third, HISTORICAL CELL-SITE INFORMATION will further the investigation by

2

corroborating information received from witnesses and providing information to ascertain the user of the SUBJECT TELEPHONE during the relevant time period.

4.     Based upon discussions with a special agent of the investigative agency, the government hereby sets forth the following specific and articulable facts showing that there are reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation.

5.     The investigation has revealed, among other things, the following. John Doe #1 owns two nightclubs, one in Corona, Queens (hereinafter, the "Corona nightclub") and one in Astoria, Queens (hereinafter, the "Astoria nightclub").   A review of John Doe #1's grand jury testimony and reports prepared by special agents of the Federal Bureau of Investigation reveal that John Doe #1 has advised the following, in substance and in part:

a.     John Doe #1 has owned the Corona nightclub for approximately five years and opened the Astoria nightclub in or about April 2012.

b.     The Corona nightclub and the Astoria nightclub use and sell products, including alcohol, that were transported from, and/or manufactured, outside the state of New York.

c.     In or about 2011, John Doe #1 hired DENIS NIKOLLA as a bouncer at the Corona nightclub.   During the course of NIKOLLA's employment at the Corona nightclub, John Doe #1 witnessed NIKOLLA interact violently on two separate occasions with two different patrons of the Corona nightclub.   John Doe #1 also witnessed NIKOLLA beat up a passerby outside the Corona nightclub.   John Doe #1 eventually learned that NIKOLLA did not have a valid security license.

3

d.      In or about December 2011, NIKOLLA was fired from his employment at the Corona nightclub.

e.      Following his termination from the Corona nightclub, NIKOLLA approached John Doe #1 in an effort to get his job back.   John Doe #1 refused to employ NIKOLLA again.

f.      In or about April 2012, NIKOLLA approached John Doe #1 at the Corona nightclub and told John Doe #1, in substance and in part, that John Doe #1 needed to pay NIKOLLA "like everyone else does," and demanded $200 per week from each of John Doe #1's nightclubs (i.e., the Corona nightclub and the Astoria nightclub).   From this conversation, John Doe #1 understood NIKOLLA to mean that other businesses in the area were paying NIKOLLA for so-called protection.   In response, John Doe #1 refused to pay NIKOLLA.   A few days later, NIKOLLA approached John Doe #1 again with another individual and reiterated to John Doe #1 that John Doe #1 had to pay him.

g.      On or about the early morning hours of September 20, 2012, John Doe #1 was at a bar in Astoria, New York (hereinafter, the "Astoria Bar").   While at the Astoria Bar, NIKOLLA approached John Doe #1 with several other men and violently shook the table John Doe #1 was sitting at.   Thereafter, NIKOLLA told John Doe #1, in sum and substance, that John Doe #1 needed to go outside and speak with NIKOLLA.   John Doe #1 initially refused, but thereafter acquiesced because NIKOLLA would not leave John Doe #1's table.   John Doe #1 proceeded to exit the bar area of the Astoria Bar with NIKOLLA and another man who was with NIKOLLA, but was prevented from fully exiting the Astoria Bar onto the sidewalk.   John Doe #1 was stuck in an enclosed area between the front entrance to the Astoria Bar and the internal entrance into the bar area of the Astoria Bar with NIKOLLA

4

and another man.   John Doe #1 has identified a photograph of REDINEL DERVISHAJ as the man who was with NIKOLLA and John Doe #1 in this enclosed area.

        h.     While in this enclosed area of the Astoria Bar, NIKOLLA reached over to DERVISHAJ's side and retrieved a firearm, which NIKOLLA then stuck in John Doe #1's rib area.   While holding the firearm at John Doe #1's rib area, NIKOLLA informed John Doe #1, in substance and in part, that John Doe #1 would pay NIKOLLA one way or another and that if John Doe #1 did not pay NIKOLLA, NIKOLLA would come to John Doe #1's house and beat John Doe #1 in front of John Doe #1's wife and children. NIKOLLA further stated, in substance and in part, that if John Doe #1 still refused to pay NIKOLLA after NIKOLLA beat him in front of his family, NIKOLLA would beat John Doe #1's wife and children in front of John Doe #1.   Thereafter, DERVISHAJ provided John Doe #1 with a phone number to call to arrange payment.   The phone number provided by DERVISHAJ is the SUBJECT TELEPHONE.

        i.     Following this encounter, John Doe #1 feared for the safety of himself and his family and returned to his residence.   Shortly thereafter, John Doe #1 decided to report the incident at the Astoria Bar to the police and drove to a precinct in Astoria, New York, where he reported the incident to the New York City Police Department ("NYPD"). Among other things, the NYPD told John Doe #1 to call 911 if he saw NIKOLLA again.

        j.     A few weeks later, John Doe #1 saw NIKOLLA in Astoria, New York and called 911.   Police responded and NIKOLLA was arrested.   John Doe #1 received an order of protection against NIKOLLA.   John Doe #1 later learned that, following his arrest, NIKOLLA was released on bail.

6.    NYPD records confirm that John Doe #1 reported the September 20, 2012 incident at the Astoria Bar to the police on September 20, 2012.

7.    According to an NYPD arrest report, on October 12, 2013 at approximately 5:50 a.m., NIKOLLA was arrested on charges of Attempted Grand Larceny in the Second Degree: Extortion, in violation of New York Penal Law ("NYPL") § 155.40(2)(a) and (2)(b), and Menacing in the Second Degree, in violation of NYPL § 120.14(1) (hereinafter, the "state charges").   NIKOLLA's criminal history report indicates that he was arraigned on these charges on October 13, 2012, at which time he posted bail.[1]

8.    John Doe #1 has provided to law enforcement various telephone numbers used by NIKOLLA, including telephone number (917) 640-1310[2] (hereinafter, the "NIKOLLA 917 Number").   In addition, telephone records indicate that, from October 10, 2012 through July 2013, telephone number (516) 423-3813 was a mobile telephone subscribed to by DENIS NIKOLLA (hereinafter, the "NIKOLLA 516 Number").

9.    Telephone records for the SUBJECT TELEPHONE indicate the following:

a.    In August 2012, the NIKOLLA 917 Number called the SUBJECT TELEPHONE 47 times and the SUBJECT TELEPHONE called the NIKOLLA 917 Number 13 times.

---

[1]    NIKOLLA ultimately pleaded guilty, on or about March 4, 2013, to a charge of Disorderly Conduct: Create Hazardous or Physically Offensive Condition, in violation of NYPL § 240.20(7).

[2]    In January 2014, the government subpoenaed subscriber information and telephone records for the NIKOLLA 917 Number, but has not yet received a response from AT&T, the service provider for the NIKOLLA 917 Number.   Subscriber information for two other telephone numbers that John Doe #1 provided to law enforcement as numbers used by DENIS NIKOLLA indicates that NIKOLLA was the subscriber for those numbers during various time periods.

        b.      During the early morning hours of September 20, 2012 – the day that NIKOLLA threatened John Doe #1 with a firearm at the Astoria Bar – at approximately 3:48 a.m., the SUBJECT TELEPHONE called John Doe #1's cellular telephone.

        c.      On October 13, 2012 – the day of NIKOLLA's arraignment on the state charges – at approximately 4:35 p.m., the NIKOLLA 516 Number called the SUBJECT TELEPHONE.

    10.    Based upon the above proffer, the government requests that the Court issue Orders that provides, pursuant to 18 U.S.C. § 2703(c)(1) and (d), a directive to the service provider to supply within seven days the HISTORICAL CELL-SITE INFORMATION for the period from September 17, 2012 to September 22, 2012.

    11.    The government also requests that the service provider, and any other person or entity whose assistance is used to facilitate execution of the Orders be ordered not to disclose (a) the existence of the Order of Authorization; (b) the existence of the Order to Service Provider and (c) the production of the HISTORICAL CELL-SITE INFORMATION, to the listed subscriber for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person, unless and until otherwise ordered by the Court. Any such disclosure might result in the destruction of or tampering with evidence and risk intimidation of potential witnesses.

12.    No prior request for the relief set forth herein has been made except to the extent set forth above.    The foregoing is affirmed under the penalties of perjury.    *See* 28 U.S.C. § 1746.

Dated: Brooklyn, New York
        March 13, 2014

_____
Nadia I. Shihata
Assistant United States Attorney
718-254-6295

8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

# 14 MISC 296

- - - - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION OF
THE UNITED STATES OF AMERICA FOR AN
ORDER AUTHORIZING THE RELEASEOF
HISTORICAL CELL-SITE INFORMATION

SEALED ORDER TO
SERVICE PROVIDER

- - - - - - - - - - - - - - - - -X

WHEREAS this Court has, upon the application of the United States of

America, entered an Order pursuant to 18 U.S.C. § 2703(c)(1) and (d), directing that within

seven days Sprint (the "service provider") disclose recorded information identifying the base

station towers and sectors that received transmissions from (347) 361-0854, a telephone issued

by the service provider and subscribed to during the relevant time period by Robert Martinez at

2535 14th St., Astoria, NY 11102 (the "SUBJECT TELEPHONE"), at the beginning and the

end of calls or text message transmissions, and the mobile switching center serving the

SUBJECT TELEPHONE during any calls or text message transmissions, for the period from

September 17, 2012 to September 22, 2012 (collectively, the "HISTORICAL CELL-SITE

INFORMATION");

NOW, THEREFORE, IT IS HEREBY:

ORDERED, pursuant to 18 U.S.C. § 2703(c)(1) and (d), that the service

provider shall supply within seven days the HISTORICAL CELL-SITE INFORMATION for

the period from September 17, 2012 to September 22, 2012;

IT IS FURTHER ORDERED that this Order shall be sealed until otherwise

ordered by the Court, except that copies may be retained by the United States Attorney's

Office, the Federal Bureau of Investigation, the service provider and any other person or entity

whose assistance is used to execute this Order; and

IT IS FURTHER ORDERED that unless and until otherwise ordered by the Court, the service provider and its representatives, agents and employees, and any other person or entity providing technical assistance in executing this Order shall not disclose until further notice in any manner, directly or indirectly, by any action or inaction, the existence of the this Order or the production of the HISTORICAL CELL-SITE INFORMATION, to the listed subscriber for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person.

Dated: Brooklyn, New York
      March 13, 2014

THE HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**14 MISC 2 96**

- - - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION
OF THE UNITED STATES OF AMERICA
FOR AN ORDER AUTHORIZING THE RELEASE
OF HISTORICAL CELL-SITE INFORMATION

SEALED ORDER
OF AUTHORIZATION

- - - - - - - - - - - - - - - - -X

      This matter having come before the Court pursuant to an application by

Assistant United States Attorney Nadia I. Shihata, an attorney for the Government as defined

by Rule 1(b)(1) of the Federal Rules of Criminal Procedure and a duly-authorized

representative of a "governmental entity" under 18 U.S.C. § 2703(c) and (d), requesting

Orders pursuant to 18 U.S.C. § 2703(c)(1) and (d), directing that within seven days Sprint (the

"service provider") disclose recorded information identifying the base station towers and

sectors that received transmissions from (347) 361-0854, a telephone issued by the service

provider and subscribed to during the relevant time period by Robert Martinez at 2535 14th St.,

Astoria, NY 11102 (the "SUBJECT TELEPHONE"), at the beginning and the end of calls or

text message transmissions, and the mobile switching center serving the SUBJECT

TELEPHONE during any calls or text message transmissions, for the period from September

17, 2012 to September 22, 2012 (collectively, the "HISTORICAL CELL-SITE

INFORMATION");

      UPON REVIEW OF THE APPLICATION, THE COURT HEREBY FINDS

THAT:

      Pursuant to 18 U.S.C. § 2703(c)(1) and (d), the government has offered specific

and articulable facts showing that there are reasonable grounds to believe that the

HISTORICAL CELL-SITE INFORMATION is relevant and material to an ongoing criminal investigation into possible violations of federal criminal laws, including conspiracy to commit extortion and attempted extortion, in violation of 18 U.S.C. § 1951, and use of a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c), being conducted by the Federal Bureau of Investigation (the "investigative agency"); now therefore,

IT IS HEREBY ORDERED, pursuant to 18 U.S.C. § 2703(c)(1) and (d), that the service provider shall supply to the investigative agency within seven days the HISTORICAL CELL-SITE INFORMATION for the period from September 17, 2012 to September 22, 2012;

Good cause having been shown, IT IS FURTHER ORDERED, that this Order and the application be sealed until otherwise ordered by the Court, and that the service provider, its representatives, agents and employees, and any other person or entity involved in facilitating this Order shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of this Order, the existence of the Order to Service Provider or the production of the HISTORICAL CELL-SITE INFORMATION to the listed subscriber for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person.

Dated: Brooklyn, New York
      March 13, 2014

THE HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

2